CATHERINE M. DOWLING, Appellant, v. JOHN K. DOWLING, Respondent.

St. Louis Court of Appeals, June 2, 1914.

1. **DIVORCE: Indignities.** To constitute a cause for divorce upon the ground of indignities, Sec. 2370, R. S. 1909, contemplates a course of conduct by one spouse towards the other, whereby the latter's condition is rendered intolerable through repeated

acts constituting indignities, and one indignity, even if made up of several contemporaneous acts, is not sufficient to constitute a ground for divorce, if they form together one whole transaction.

2. ———: ———. The use of offensive language by a husband to his wife, his laying of his hand on her shoulder by way of emphasis of what he said, and his desertion of her, all occurring on the same day and within a brief period of time, constituted one continuous transaction, and did not justify the granting of a divorce on the ground of "indignities," under Sec. 2370, R. S. 1909, since there was only one indignity.

3. ———: ———. Neither a husband's declaration, on the morning following a quarrel with his wife, that he was not going to continue to live with her, nor his notification of the landlord and the grocer that he would not be responsible for her bills, constituted an indignity, under Sec. 2370, R. S. 1909, so as to entitle the wife to a divorce.

Appeal from Hannibal Court of Common Pleas.— *Hon. William T. Ragland*, Judge.

AFFIRMED.

*Berryman Henwood* for appellant.

(1) What constitutes "indignities" as a ground for divorce depends upon the facts and circumstances of each case and the statute should be construed liberally. 1 Bishop on Marriage & Divorce (6 Ed.), sec. 826; 14 Cyc. 625; Hooper v. Hooper, 19 Mo. 355; Dawson v. Dawson, 23 Mo. App. 169; McCartin v. McCartin, 37 Mo. App. 471; McCann v. McCann, 91 Mo. App. 1; Rose v. Rose, 129 Mo. App. 175. (2) Whether the evidence is sufficient to sustain a decree is determined not by the consideration of any particular fact, standing alone, but by a consideration of all the facts in the case, and the appellate courts will review the evidence as a whole in passing upon this question. Bishop, Mar. & Div., supra; Griesedieck v. Griesedieck, 56 Mo. App. 94; Jennings v. Jennings, 85 Mo. App. 290; Lynch v. Lynch, 87 Mo. App. 32; McCann v. McCann, supra.

(3) An offer of reconciliation not made in good faith is disregarded by the courts. 14 Cyc. 619; Salorgne v. Salorgne, 6 Mo. App. 602; Messenger v. Messenger, 56 Mo. 329.

*J. W. Hays* for respondent.

(1) It is well settled law in this State that the proof of one act amounting to an indignity, is not sufficient under the statutes. Mahan v. Mahan, 70 Mo. App. 337; Kempf v. Kempf, 34 Mo. App. 211; Webb v. Webb, 44 Mo. App. 229. (2) In divorce proceedings the appellate court will examine the evidence itself and draw its own conclusion therefrom, not being bound by the findings of facts made by the trial judge, but when the testimony was oral and is conflicting on account of the superior advantages possessed by the trial judge for weighing the testimony and judging of its credibility an appellate court will give much deference to his conclusion of facts. Torlotting v. Torlotting, 82 Mo. App. 200.

ALLEN, J.—This is an action for divorce, prosecuted by the wife, and grounded upon indignities alleged to have been offered to her by the defendant husband. The latter interposed a general denial. The court below found the issues for the defendant and dismissed plaintiff's bill, and from such decree the plaintiff prosecutes this appeal.

Plaintiff and defendant were married on September 19, 1911, and lived together until January 3, 1912. Plaintiff had been twice married theretofore, having obtained divorces from both of her former husbands. By her first marriage she had two children, a boy and a girl, who were aged sixteen and eighteen years respectively at the time of her marriage to the defendant. At the latter time plaintiff and her two children were living in the city of Hannibal, plaintiff and her daughter being employed in a shoe factory.

The defendant owned a farm some five miles north of Hannibal, on what is known as Bay Island, and also some property in the city of Hannibal. His business, it seems, was that of farming, and prior to his marriage it appears that he spent the greater part of his time upon the farm, living in one of two cabins located thereon.

Plaintiff and defendant had been acquainted with each other less than a week prior to their marriage. After the marriage they lived, with plaintiff's children, in the house which plaintiff had theretofore occupied as a tenant, in the city of Hannibal, until the separation. It appears, however, that defendant contemplated taking his wife to the farm to live, and that their stay in Hannibal was intended to be temporary.

The alleged indignities, counted upon in the petition, relate to defendant's conduct toward plaintiff on the evening of January 3, 1912, together with alleged improper conduct on his part with another woman.

Both plaintiff and defendant testified that, prior to the evening of January 3d, there had been no trouble whatsoever between them. Plaintiff's version of what occurred on that evening is as follows:

"He came in saying that he was going to come back that night and take us all to the show, but when he got back it was too late to go to the show. He came in and sat down and I said, 'It's too late to go to the Park Theatre, but we can go to the Star.' And he commenced by saying, 'Well, I've made a damned fool of myself,' and he said that a dozen times. Finally, I said, 'How have you made yourself a damned fool?' He says, 'By marrying you and two damned spoiled kids,' and he said he didn't care anything about me and never would have married me if he hadn't been drunk as a fool and that he was going to step down and out; the law didn't compel him to support me and two damned kids and he wasn't going to do it. . . . I could take my two kids and take in boarders or take

in washing or anything I damn please; not to look to him for support; he was going to shut me off. . . . 'Don't ever come in my sight.' . . . 'I am going to get out of it, By God, right tonight.'"

And plaintiff testified by way of emphasis defendant struck her on the right shoulder; that he addressed plaintiff's daughter, saying that he was not going to buy clothes for her any longer, and that thereupon a controversy ensued between defendant and the girl, in the course of which defendant applied a vile epithet to the latter, and said that if she were a man he would "whale" her. Plaintiff further testified that she thereupon asked defendant if she had done anything to merit such treatment and that he said: "No, you are as good a woman as ever lived. You are as good a woman as my mother, but I am going to get out of it."

Plaintiff's said daughter, Bertha Sterling, testifying in plaintiff's behalf, corroborated, in the main, plaintiff's version of what took place on the evening in question.

Defendant left the house, returning the next morning after his clothes. Plaintiff testified that, upon his return, she asked him if he meant what he had said the night before, and that he said: "I certainly did. I haven't forgoten anything I said. I am going to step down and out;" and that defendant notified the landlord, and the grocer with whom they dealt, that he would not be responsible for plaintiff's rent or grocery bills.

Defendant strongly denied having used the language attributed to him by plaintiff. He declared that he did not state that he had made a fool of himself by marrying her, nor did he say that he cared nothing for her and would not have married her if he had not been intoxicated. On the contrary he declared that he was quite fond of his wife; that they had never had the slightest difficulty theretofore, but had been quite

affectionate, and that the trouble had been brought about by plaintiff's daughter. He testified that upon the evening in question the daughter asked him for money, and that he said: "Why is it you never care for me only when you want some money?" That she replied that this was not true, and that he then said: "It is. You simply don't greet me at all, don't speak to me;" that thereupon the daughter called him a liar, and that he said to plaintiff: "Are you going to allow that?" He stated that plaintiff said that she could not help it, and that defendant ought to give her daughter some money. He declared that he merely said to the daughter: "If you were a man you wouldn't say that—wouldn't call me a liar;" and that he then said that it was getting too hot for him and that he was going to get out.

Defendant said that, upon returning the next morning to get his clothes, nothing was said between him and plaintiff except that she asked him if he wanted the clothes, and he said: "I guess I better take them;" and that she thereupon said: "Well, all right, here they are."

Defendant does not deny notifying the landlord and the grocer that he would not be responsible for his wife's bills.

There is considerable testimony in the record as to whether or not plaintiff refused to go to live with defendant on his farm at Bay Island. Defendant says that, though plaintiff knew before the marriage that defendant's home was upon the farm, which they visited just after the marriage, plaintiff thereafter objected to going there to live, and that he had been unable to get her to do so. This is denied by plaintiff, who testified that she was always willing and in fact wanted to live upon the farm, but that defendant had delayed moving there. But however this may be, the matter is not here important in view of the state of the pleadings, and since it does not appear that the difficulty

upon the evening in question came about on this account. However, upon the trial, defendant declared that he still wanted plaintiff to come to the farm and live with him, and would be glad to take her there at once; saying, in effect, that he had not intended to permanently abandon plaintiff, but thought that, after his absence for a time, she would be willing to go with him to the farm.

As to the other charge contained in the petition but little need be said. It appears that two days after the separation defendant met a Mrs. Carroll, wife of his former hired man, at the railway station in Hannibal. She and her husband, Ed. Carroll, formerly lived in one of the cabins upon the farm, but had moved to Kansas City, where Carroll hoped to obtain other employment. Failing in this, the latter accepted employment with defendant; and his wife was returning to Hannibal with a young baby, to go out to the farm. Defendant met her and the baby at the station and took them to a hotel, where they could be cared for until later in the day, when they were taken to the farm. Some rumor concerning this matter reached plaintiff's ears, and her suspicions became aroused. The trial court, however, very properly found that the allegations of the petition in this regard were wholly unproved.

After leaving plaintiff, defendant went to his farm and did not again see her until after the institution of the suit on the 22nd day of the same month. It appears that, upon hearing that defendant had met Mrs. Carroll at the station and gone with her to a hotel, plaintiff at once consulted counsel, and on January 13th, ten days after the separation, made affidavit to the petition filed herein.

The trial court found that the conduct of the defendant on the evening of January 3d, was an indignity within the meaning of the statute, finding "the allegations of the petition in those respects substantially proved; that they are practically true, as alleged and as

testified 'to by plaintiff; but, taking them all together, they were one transaction—they were one indignity, and therefore, not a ground for divorce under the 'statute.'' The court then said:

. ''It is true that, after that transaction, he remained away from the plaintiff for a period from January 3d until the filing of the suit on the 22d of January, the service of process on the defendant being on the 25th of January; but the mere absence, even for that length of time, is no ground, but had it continued for one year, would, no doubt, be ground for divorce. But that does not constitute an indignity, even taken in connection with the other circumstances, because the leaving was a part of the other transaction. The mere absence itself is not an indignity because the Legislature has seen fit to make it ground for divorce where it has existed for the requisite length of time.

''The mere notification to the landlord that he would no longer be responsible for the rent is not an indignity.

''The court finds the issues for the defendant and the bill is dismissed.''

The only question before us is whether the learned trial judge was correct in holding that there was in fact but one indignity shown, and that, therefore, plaintiff had not made out a case entitling her to a divorce under that provision of the statute, to the effect that where either party to the contract of marriage ''shall offer such indignities to the other as shall render his or her condition intolerable,'' the injured party may obtain a divorce from the bonds of matrimony.

It is clear that one indignity is not sufficient. [See Kempf v. Kempf, 34 Mo. 211; Cannon v. Cannon, 17 Mo. App. 390; Webb v. Webb, 44 Mo. App. 229; Mahn v. Mahn, 70 Mo. App. l. c. 342.] It appears that, after defendant returned home on the evening in question, he remained a short time, perhaps half an hour; and that what took place happened within this period of

time.. If plaintiff's version of the matter is to be taken as true, then defendant's conduct toward her amounted to an indignity. But it does not appear that what defendant said and did in the brief space of time in question could well be said to be such *indignities* as to render plaintiff's condition intolerable, within the meaning of the statute. To constitute a cause for divorce upon this ground, the statute undoubtedly contemplates a course of conduct of one spouse toward the other, whereby the latter's condition is rendered intolerable through repeated acts constituting indignities. And it is said that the indignities "must be frequent and not isolated, and that they must be of such a nature as to tend to the subversion of the family relation" (Webb v. Webb, supra); and that one indignity, even if made up of several contemporaneous acts, if they form together one whole transaction, is not suf- ficient to constitute "such indignities to the plaintiff as to render his condition intolerable." [Cannon v. Cannon, supra.]

Appellant's position is that the language used by defendant on the occasion in question, the blow alleged to have been struck her, defendant's abandonment of her, and what defendant said the following morning when he returned for his clothes, as well as defend- ant's notification to the landlord and the grocer, con- stitute separate indignities.

As to the striking of plaintiff it does not appear to be contended that defendant sought to inflict any in- jury upon her, but that defendant merely brought down his hand or fist upon her shoulder, by way of emphasiz- ing something which he said to her. Defendant stoutly maintains he did not strike her at all, and that under no circumstances would he be guilty of such an act. But at any rate, it seems clear that what took place within the brief time in question, and which consti- tuted one continuous transaction, cannot well be sep-

arated into component parts so as to make it constitute more than one indignity.

As to defendant's desertion of plaintiff, it too was a part and parcel of the same transaction, and cannot be separated therefrom so as to give effect to it as an indignity; though being in itself a ground for divorce, if without reasonable cause and continuing for one year. Neither does it appear that either defendant's alleged declaration upon the following morning that he was not going to continue to live with plaintiff, or the notifying of landlord and grocer, can amount to an indignity which is a ground for divorce. [See Hooper v. Hooper, 19 Mo. 355.]

Furthermore plaintiff's action, as appears by the allegations of the petition, is predicated solely upon what happened upon the evening of January 3, 1912, together with the alleged improper conduct of defendant with another woman. The latter was wholly unproved; and the former cannot, we think, standing alone, authorize the granting of a divorce upon the ground that the defendant offered to plaintiff such indignities as to render her condition intolerable.

For the reasons given above the judgment of the circuit court must be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.